UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:23-cv-02262 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| NUVASIVE, INC., AMY BELT | : **SECURITIES EXCHANGE ACT OF** |
| RAIMUNDO, J. CHRISTOPHER BARRY, | : **1934** |
| DANIEL J. WOLTERMAN, JOHN A. | : |
| DEFORD, PH.D., LESLIE V. NORWALK, | : **JURY TRIAL DEMANDED** |
| ROBERT F. FRIEL, R. SCOTT | : |
| HUENNEKENS, SIDDHARTHA C. KADIA, | : |
| PH.D., and VICKIE L. CAPPS, | : |
| | : |
| Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against NuVasive, Inc. ("NuVasive" or the "Company") and the members of NuVasive's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between NuVasive and Globus Medical, Inc. and affiliates ("Globus").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on March 13, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Zebra Merger Sub, Inc., a Delaware corporation and a direct, wholly-owned subsidiary of Globus ("Merger Sub") will merge with and into NuVasive, with NuVasive surviving the transaction as a direct, wholly-owned subsidiary of Globus (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 8, 2023 (the "Merger Agreement"), each NuVasive stockholder will receive the right to receive 0.75 shares of Globus common stock (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 28% of the newly combined company common stock outstanding and Globus shareholders will own approximately 72% of the newly combined company common stock outstanding.

3.      As discussed below, Defendants have asked NuVasive's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to NuVasive's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, an owner of NuVasive stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Amy Belt Raimundo has served as a member of the Board since August 2021.

11.     Individual Defendant J. Christopher Barry has served as a member of the Board since November 2018 and is the Company's Chief Executive Officer.

12.     Individual Defendant Daniel J. Wolterman has served as a member of the Board since July 2015.

13.     Individual Defendant John A. DeFord, Ph.D. has served as a member of the Board since February 2018.

14. Individual Defendant Leslie V. Norwalk has served as a member of the Board since May 2014.

15. Individual Defendant Robert F. Friel has served as a member of the Board since February 2016.

16. Individual Defendant R. Scott Huennekens has served as a member of the Board since October 2018.

17. Individual Defendant Siddhartha C. Kadia Ph.D. has served as a member of the Board since February 2021.

18. Individual Defendant Vickie L. Capps has served as a member of the Board since June 2015.

19. Defendant NuVasive is a Delaware corporation and maintains its principal offices at 7475 Lusk Boulevard, San Diego, California 92121. The Company's stock trades on the NASDAQ Global Select Market under the symbol "NUVA."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

22. NuVasive, a medical technology company, develops, manufactures, and sells procedural solutions for spine surgery. It provides surgical access instruments, specialized spinal implants, and fixation systems that facilitate the preservation and restoration of patient alignment. The Company also offers cervical total disc replacement technology for cervical spinal fusion surgery; neuromonitoring systems; and Pulse platform, a software ecosystem that integrates

multiple hardware technologies into a single, condensed footprint in the operating room. In addition, it provides expandable growing rod implant systems for the treatment of early-onset scoliosis; various biologics that are used to aid in the spinal fusion or bone healing process; Precice, an intramedullary device that utilizes the MAGEC technology to non-invasively lengthen the femur and tibia; and onsite and remote monitoring of the neurological systems of patients undergoing spinal and brain-related surgeries. The Company sells its products to patients, surgeons, hospitals, and insurers through independent sales agents, directly employed sales personnel, and distributors in the United States and internationally. NuVasive was incorporated in 1997 and is headquartered in San Diego, California.

23. On February 9, 2023, the Company and Globus jointly announced the Proposed Transaction:

> AUDUBON, Pa. and SAN DIEGO, Feb. 9, 2023 /PRNewswire/ -- Globus Medical (NYSE: GMED), a leading musculoskeletal solutions company, and NUVASIVE (NASDAQ: NUVA), the leader in spine technology innovation, today announced they have entered into a definitive agreement to combine in an all-stock transaction. The transaction brings together two well-regarded technology companies in the musculoskeletal industry, which have a shared vision focused on innovation in a relentless pursuit of unmet clinical needs to improve patient care.
>
> Under the terms of the agreement, which was unanimously approved by the boards of directors of both companies, NuVasive shareholders will receive 0.75 of a share of Globus Medical Class A common stock for each share of NuVasive common stock owned at the closing of the transaction. Based on this exchange ratio, the implied share price for NuVasive would be $57.72, an equity value of $3.1 billion, based on Globus Medical's closing share price on February 8. Following the close of the transaction, NuVasive shareholders will own approximately 28% of the combined company, and Globus Medical shareholders will own approximately 72%, on a fully diluted basis.

"This transaction reflects our mission to become the leading musculoskeletal technology company in the world by developing products that promote healing in patients with musculoskeletal disorders," said Dan Scavilla, president and chief executive officer of Globus Medical. "With NuVasive, we can help support more patients through leading innovation and expanding our commercial reach to provide superior service to our surgeon and hospital partners. We look forward to combining the NuVasive and Globus Medical teams to capitalize on the many opportunities to improve patient care and create sustainable shareholder value."

"Our combination with Globus Medical is transformative, joining two companies with highly complementary capabilities, geographic footprints and customer bases," said Chris Barry, chief executive officer of NuVasive. "Together, we will be able to offer an exceptional portfolio of clinically proven solutions, supported by strong commercial and surgeon education teams. The new company will be well-positioned to deliver value creation for shareholders, further support our surgeon partners—and most importantly, change the lives of more patients."

**Strategic and Financial Benefits**

- **Complementary global scale and expanded commercial reach.** The transaction accelerates each company's globalization strategy to target the $50 billion musculoskeletal market, which includes spine, orthopedics, enabling technology, power tools, biologics and more. Together, Globus Medical and NuVasive will have a presence in more than 50 countries with more than 5,000 employees. The new organization's larger commercial sales organization will enable it to further penetrate existing and future markets, reaching more surgeons and patients around the world.
- **Comprehensive and innovative portfolio in spine and orthopedics.** The transaction pairs Globus Medical's and NuVasive's complementary spine and orthopedic solutions and enabling technologies to create one of the most comprehensive, innovative offerings in the industry.
- **Continued commitment to product development and surgeon education**. Globus Medical and NuVasive both have strong records of developing technology that solves unmet clinical needs for the treatment of musculoskeletal disorders. Globus Medical will continue to prioritize collaboration with healthcare professionals to develop these ground-breaking products and solutions to treat the full continuum of care from planning to execution to postoperative data.
- **Expands operational capabilities.** The company will leverage operational excellence capabilities to further unlock manufacturing

capacity and asset utilization to support the commercial organization. Globus Medical and NuVasive will benefit from their respective operational advantages—including but not limited to Globus Medical's strong, in-house manufacturing capacity and NuVasive's global distribution networks, including NuVasive's Memphis-based global distribution center.

- **Compelling upside revenue potential**. The Globus Medical and NuVasive product, customer, and geographic footprints are highly complementary. As a result, through this transaction, the combined company expects to serve more surgeon customers with more solutions in more geographies around the world, creating compelling growth opportunities over the long-term.
- **Strong financial profile and value creation opportunity.** The combined companies have strong track records of delivering above-market net sales growth, through their innovation and commercial channels. The company will leverage Globus Medical's financial rigor and discipline as it aims to deliver a mid-30-percent EBITDA profile over the next three years, which includes approximately $170 million in identified cost synergies.

**Leadership**

Upon closing of the transaction, the combined company will have an eleven-member board composed of all eight directors from Globus Medical's board and three directors from NuVasive's board.

David Paul, Chairman of the Globus Medical board of directors, will serve as Chairman of the combined company's board of directors, Dan Scavilla will serve as chief executive officer and as a member of the board, Keith Pfeil, chief financial officer of Globus Medical, will serve as chief financial officer of the combined company, and Chris Barry, chief executive officer of NuVasive, will support integration planning of the combined company.

Globus Medical's and NuVasive's executive leadership teams will be actively involved in integration planning. Integration efforts will be focused on ensuring continued sales and innovation execution, retaining critical talent, and delivering on growth and cost synergies.

**Approvals and Time to Close**

The transaction is expected to close in the middle of 2023, subject to the approval of both companies' shareholders, regulatory approval, and other customary closing conditions.

* * *

**Advisors**

Goldman Sachs & Co. LLC is serving as financial advisor to Globus Medical, and Goodwin Proctor LLP is serving as legal counsel. BofA Securities, Inc. is serving as financial advisor to NuVasive, and Wachtell, Lipton, Rosen & Katz is serving as legal counsel.

\* \* \*

*Globus Medical and NuVasive to Combine in All-Stock Transaction to Create Innovative Global Musculoskeletal Company Focused on Patient Care*, NUVASIVE (Feb. 9, 2023) https://ir.nuvasive.com/news-releases/news-release-details/globus-medical-and-nuvasive-combine-all-stock-transaction-create?field_nir_news_date_value[min]=.

24.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that NuVasive's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Registration Statement**

25.     On March 13, 2023, NuVasive and Globus jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by BOfA in its analyses.  The Registration Statement discloses management-prepared or management-approved financial projections for the Company and Globus which are materially misleading.  The Registration Statement indicates that in connection with the rendering of their fairness opinion, the management of Globus and NuVasive prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors to aid them in forming a view about the stand-alone and pro forma valuations.  Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the financial advisors.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

27.     For the *Preliminary Globus Standalone Projections and Globus Standalone Projection*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     For the *Globus Adjusted NuVasive Standalone Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Adjusted EBITDA and Unlevered Free Cash Flow, but

fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metric to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. For the *Globus Synergy Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Adjusted EBITDA Impact of Revenue (Dis-Synergies) Synergies and Adjusted EBITDA Impact of Cost Synergies, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. For the *Globus Pro Forma Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Adjusted EBITDA and Unlevered Free Cash flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

31. For the *NuVasive Long Range Business Plan for Fiscal Years 2023 through 2027*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Adjusted Operating Income and Adjusted EPS, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

32. For the *NuVasive Standalone Projections* and *Revised NuVasive Standalone Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Adjusted Operating

Income, Adjusted EPS, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

33. For the *NuVasive Combined Company Projections*, the Registration Statement provides values for the non-GAAP (Generally Accepted Accounting Principles) financial metric for fiscal years 2023 through 2027: Adjusted EBITDA, but fails to provide line items used to calculate this metric and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

34. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

35. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

11

non-discretionary expenditures that are not deducted from the measure.[1]

36. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measures to make the non-GAAP metric included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for NuVasive*

37. With respect to BofA's *Selected Publicly Traded Companies Analysis* for NuVasive, the Registration Statement fails to disclose: (i) the financial metrics of each company selected by BofA for the analysis; and (ii) the inputs and assumptions underlying the 2023 Adjusted EBITDA multiples of 19.0x to 23.0x and 2023 Adjusted multiples of 19.0x to 23.0x.

38. With respect to BofA's *Discounted Cash Flow Analysis* for NuVasive, the Registration Statement fails to disclose: (i) the terminal values for NuVasive; (ii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (iii) the inputs and assumptions underlying the last-twelve-month EBITDA terminal multiples ranging from 9.5x to 11.5x; (iv) the inputs and assumptions underlying the perpetuity growth rate ranging between 5.2% and 6.4%; (v) the weighted average cost of capital of NuVasive; and (vi) net debt of the Company as of the fourth quarter of fiscal year 2022.

39. With respect to BofA's analysis of selected precedent transactions, the Registration Statement fails to disclose: (i) transactions selected by BofA for the analysis; (ii) for each target company observed, the enterprise values and adjusted EBITDA for the last twelve months prior to

---

[1] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

the announcement date of each transaction; (iii) the announcement date of each transaction; and (iv) the premium paid for each target company.

40. With respect to BofA's analysis of equity research analyst price targets for NuVasive, the Registration Statement fails to disclose: (i) the research analysts observed; (ii) the price targets published by each research analyst; and (iii) the inputs and assumptions underlying the 10.5% discount rate applied to the range of the price targets.

41. With respect to BofA's *Selected Publicly Traded Companies Analysis* for Globus, the Registration Statement fails to disclose: (i) the financial metrics of each company selected by BofA for the analysis; and (ii) the inputs and assumptions underlying the 2023 adjusted EBITDA multiples of 17.5x to 22.0x and the 2023 adjusted EPS multiples of 27.0x to 35.0x.

42. With respect to BofA's *Discounted Cash Flow Analysis* for Globus, the Registration Statement fails to disclose: (i) the terminal values for Globus; (ii) the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.5%; (iii) the inputs and assumptions underlying the last-twelve-month EBITDA terminal multiples ranging from 18.0x to 22.0x; (iv) the inputs and assumptions underlying the perpetuity growth rate ranging between 6.0% and 7.4%; (v) the weighted average cost of capital of Globus; and (vi) the net debt of Globus as of the end of the fourth quarter of fiscal year 2022.

43. With respect to BofA's analysis of equity research analyst price targets for Globus, the Registration Statement fails to disclose: (i) the research analysts observed; (ii) the price targets published by each research analyst; and (iii) the inputs and assumptions underlying the 9.5% discount rate applied to the range of the price targets.

44. With respect to BofA's *Has/Gets Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 9.0% to 11.0%; (ii)

the inputs and assumptions underlying the perpetuity growth rate of 2.0% to 3.0%; and (iii) the decrease in cash resulting from the Proposed Transaction.

45. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things,

the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

49. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

50. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

51. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of NuVasive within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of NuVasive, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of NuVasive, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of NuVasive and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

56. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: March 16, 2023

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

/s/ *Benjamin Y. Kaufman*
Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Fax: (212) 686-0114
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*